UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES C. WALKER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-01253** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: I (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("The Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied the request of Plaintiff, Charles C. Walker, ("Walker"), for a period of disability and Disability Insurance Benefits ("DIB") pursuant to Title XVI, 42 U.S.C. § 423.[1]

**I.   Background**

Walker is a fifty-one (51) year old male who was forty-three (43) years old at the date of alleged onset. R. Doc. 14. Walker is 235 pounds, 6-feet 3 inches tall, he has at least a high school education, and has relevant work history as a Surgical Laser Tech, Manager of Marketing, and Sales Representative. R. Doc. 12, Tr. 212, 213. Walker filed for a period of disability and DIB under Title II and SSI under Title XVI on August 21, 2019, alleging disability since May 20, 2014, due to spinal, neck, shoulder, and teeth injury. R. Doc. 12, Tr. 204.  All claims were initially denied on November 12, 2019[2] and April 9, 2020[3]. R. Doc.12, Tr. 200, 213.

Walker filed a written request for hearing on April 18, 2020. R. Doc. 12, Tr. 231-245. Jim Fraiser, the Administrative Law Judge ("ALJ"), held a hearing on November 3, 2020. R. Doc. 12, Tr. 8-22.  The ALJ denied Walker's claim on December 3, 2020, finding he was not disabled under the meaning of the Social Security Act ("SSA"). R. Doc. 12, Tr. 11-18.

---

[1] Rec. Doc. No. 1, p.1.
[2] No disability established (medical evidence insufficient).
[3] Other than unspecified arthropathies no disability established.

In his decision, the ALJ analyzed Walker's claims pursuant to the five-step[4] evaluation process used to determine whether a claimant is disabled. Using this process, the ALJ found that Walker met the insured status requirements of the SSA through December 31, 2019. He did not engage in substantial gainful activity from May 20, 2014 through December 31, 2019, his date of last insured. *Id.* at Tr. 13. The ALJ further found that Walker suffered from degenerative disc disease ("DDD"), osteoarthritis, carpal tunnel syndrome, and neuropathy. *Id.* The ALJ also noted that Walker had been evaluated and treated for obesity.

At Step 3 the ALJ found that while there was objective evidence in the record of impairments, they were non-severe in that they at most established a slight abnormality that would have no more than a minimal effect on Walker's ability to meet the basic demands of work activity. The ALJ held that Walker did not have an impairment, or combination thereof, which medically equaled the impairments listed in 20 C.F.R. Part. 404, Subpart P, Appendix 1, so as to constitute a presumptive disability. *Id.* Tr. 14. The ALJ found that through the date last insured Walker had the residual functional capacity ("RFC") to perform light work except that he could lift 20 pounds occasionally and 10 pounds frequently. *Id.* at Tr. 15. The ALJ further found that Walker could stand and walk for six out of an eight-hour day for two hours at a time. *Id.*

The ALJ noted that Walker could sit for six hours out of an eight-hour day, for one hour at a time. He held that Walker could push less than ten pounds with the left upper extremity and that he could frequently grasp handle and finger with the left upper extremity. *Id.* The ALJ further found that Walker could occasionally reach overhead with the left upper extremity, push less than 20 pounds with the left lower extremity. *Id.* The ALJ found that Walker could push less than 20 pounds with the left lower extremity and should avoid all exposure to hazardous machines, commercial driving, heights, or ladders. *Id.*

---

[4] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 13435 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)). First, the claimant must not be presently working at any substantial gainful activity. *Id.* Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.*; *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

The ALJ found that Walker had medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however, the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence. *Id.* at Tr. 16. For example, the ALJ noted that while a neurological impairment existed that the diagnostic images were often described as "minimal," "mild," or "small." *Id*. The ALJ, after conducting a thorough review of the medical records, noted that Walkers musculoskeletal symptoms were moderate but with normal gait, ambulation, and negative straight leg raising. *Id*. He also noted that Walker postponed surgical intervention in order to attempt more conservative care which consisted of rhizotomies and pain-controlling injections which reportedly provided relief. *Id*.

The ALJ held that Walker was capable of performing his past relevant work as an automobile salesperson which did not require work that was precluded by his RFC. *Id*. at Tr.18. The ALJ noted that Walker's past relevant work as an automobile salesperson and surgical laser technician are both light exertion level jobs. *Id*. The ALJ found that Walker was not under a disability at any time from May 20, 2014, the alleged onset date through December 31, 2019, the date last insured. *Id*.

Walker filed a complaint on June 28, 2021, contending that the ALJ's decision was not based upon substantial evidence. R. Doc. 1. Walker contends that the vocational expert failed to properly determine his RFC when he concluded that Walker was able to perform the position of automobile salesman. Walker contends that even though an automobile salesman is not a commercial driving position, he is still prohibited from working in the position because it requires taking customers on test drives which he is unable to do regardless of the percentage of time spent. R. Doc. 14. Walker contends that an evaluation of other work in the national economy should be done in order to find that Plaintiff is not disabled. *Id.* at p. 7.

Walker contends that the inaccuracies in the ALJ's citations to evidence render his findings not supported by substantial evidence as required by the regulations. *Id.* at 9. Walker also contends that the ALJ failed to properly evaluate Walker's symptoms under SSR 16-3p. rendering the decision devoid of substantial evidence.

The Commissioner contends that substantial evidence supports the ALJ's Step Four finding that Walker

could perform his past relevant work as an automobile salesman. R. Doc. 15. The Commissioner further contends that the ALJ properly cited substantial evidence from the record and that any scrivener's errors are immaterial. *Id*. Finally, the Commissioner contends that substantial evidence supports the ALJ's evaluation of Walker's alleged functional limitations due to pain.

## II. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 122681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by

4

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(c)(2)). However, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The relevant criteria to consider provides that the ALJ consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence". *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527. *See Newton*, 209 F.3rd 448. Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status."*Martinez v. Chater*, 64 F.3d 173, 176 (5th Cir. 1995).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (*citing Martinez*, 64 F.3d at 174).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. 416(i)(1), 423(d)(1)(A). Section 423(d)(3)

5

of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. 423(d)(3).

### III.   Analysis

#### A.   Vocational Expert Determination of Walker's Ability to Perform Past Work

Walker contends that he is prohibited from working as a "commercial auto salesman" because, he is required to take customers on test drives. R. Doc. 14. He contends that he would be unable to perform the job regardless of the percentage of time spent doing the test drives. *Id.* Walker further contends that an evaluation of other work in the national economy should be done to determine whether he is disabled.

The Commissioner contends that substantial evidence supports the ALJ's Step Four finding that Walker could perform his past relevant work as an automobile salesman.  R. Doc. 15. The Commissioner, therefore, contends that the ALJ's decision is based upon substantial evidence and the ALJ's decision should be affirmed.

The ALJ found that Walker was capable of performing past relevant work as an automobile salesman. He noted that this work did not require the performance of work-related activities precluded by Walker's RFC. In the RFC assessment, the ALJ found that Walker could sit for six hours out of an eight-hour day, for one hour at a time. *See* R. Doc. 12, Tr. 15.  The ALJ further found that Walker had past relevant work as an automobile salesperson was of a light exertion level and skilled at specific vocational preparation level 6. *Id*. at Tr. 18. The ALJ further found that the automobile salesperson work met the recency, duration, and earnings requirements and thus constitutes Walker's past relevant work. *Id.*

It is settled that the authoritative sources for job requirements are both vocational expert testimony and the Dictionary of Occupational Titles (DOT).  Additionally, Courts can rely upon *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)*. In this case both the DOT and vocational expert agree that an automobile salesperson job does not entail commercial driving. *Id.* at Tr. 188.  The DOT defines a salesperson, automobiles:

CODE: 273.353-010  TITLE(s): SALESPERSON, AUTOMOBILES (retail trade)

> Sells new or used automobiles, trucks, and vans on premises of vehicle sales establishment: Explains features and demonstrates operation of car in showroom or on road. Suggests optional equipment for customer to purchase. Computes and quotes sales price, including tax, trade-in allowance, license fee, and discount, and requirements for financing payment of vehicle on credit. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May be designated Salesperson, New Cars (retail trade); Salesperson, Used Cars (retail trade).

Walker does not point to a specific passage of the DOT that conflicts with the vocational expert's statement. Further, driving is not a significant part of this job as described by the DOT and therefore the job does not involve commercial driving. The DOT further specifies that any "driving-operating" is "not significant" for this job. *See* SSR 00-4p, 2000 WL 1898704, *3.

In this case the vocational expert responded to the ALJ's hypothetical person of Walker's age, education, work history, transferable, skills, and RFC. He based his opinion on the DOT/SCO and found that Walker could perform work as an automobile salesperson as actually and generally performed. R. Doc. 12 at Tr. 18. The Court finds that there was no apparent conflict in the vocational expert's statement that was inconsistent with or not addressed by the DOT. Therefore, the ALJ's opinion is consistent with the DOT and the vocational expert's statement such that the opinion is based upon substantial evidence.

### B. ALJ's Citation of Evidence and Inaccuracies

Walker contends that the ALJ made frequent errors when citing to the record which render his position unsupported by substantial evidence. Walker points to two citation errors made by the ALJ when citing to the record to support his findings and conclusions. R. Doc. 14, p. 9. Walker contends that the ALJ made errors regarding examining and treating physicians found in Walker's medical record evidence, their specialties, and their relationship with him. *Id*. According to Walker, the records relied upon by the ALJ as evidence of the marginal severity of Plaintiff's impairments do not support the allegations made and some of the citations made by the ALJ do not cite to evidence that support his findings. *Id* at 9.

The Commissioner contends that the ALJ properly cited the record such that substantial evidence supports

his determinations. R. Doc. 15. The Commissioner further points out that Walker does not dispute the substance of the ALJ's determinations but only nonexistent and immaterial errors. *Id.*

The record shows that the ALJ found Walker chose to postpone surgical intervention in order to attempt more conservative care. The ALJ's record citation is regarding treatment records from June 24, 2014, to December 2, 2014.  R. Doc. 12, Tr. 421-430. The alleged disability period for which Walker asserts that his disability began was on May 20, 2014, through December 31, 2019.  The correct record during the alleged disability period that referenced a surgical recommendation was dated October 24, 2014.  The record read as follows: "Mr. Walker has recently seen orthopedist, Simon Finger MD., for the left shoulder. Dr. Finger has requested surgery for the shoulder, but MR. Walker has elected to continue shoulder rehabilitation at this time." *See Id.* at Tr. 474. It does seem that the ALJ erred in his record reference, but the error is harmless because the records support the ALJ's ultimate conclusion. Specifically, the record shows that Walker testified that the medication he takes for the chronic pain does in fact help decrease the pain.  *See Id.* at Tr. 177.  Walker also testified that his doctor did recommend surgery but that he preferred to make surgery his last option and that due to COVID he had not yet followed through on another rhizotomy. *Id*. at 186-187.

The record also showed that he returned to the pain specialist in February 2020 for a lumbar ESI to assist with pain reduction. *Id*. at Tr. 715. He reported to the doctor that the mediation reduces his pain and he requested Tramadol. *Id*. On that visit he descried his pain level as 6/10.  *Id*. He was scheduled for a follow up in June 2020, but the record is devoid of any evidence of follow up. In other words, the record shows that Walker chose conservative care as the ALJ concluded. While the ALJ did not reference the proper portion of the record, the record nevertheless supports the finding such that the ALJ's opinion is based upon substantial evidence.

Next, Walker suggests that the ALJ's citations comparing the opinions of the non-examining physicians, Mohammad Kanaa, M.D., and Timothy Honigman, M.D., to that of Mohammad Yousuf, MD suggest that his medical records were not properly reviewed and evaluated. R. Doc. 14, p. 11. Walker further complains that Dr. Yousuf was misclassified as a state agency medical examiner and that the ALJ wrongfully reference a

Discharge/Return to Work Assessment which contain and illegible signature.

According to the record, the ALJ stated the following: "With regard to the opinion evidence, the undersigned considered the opinions of the state agency consultants, Mohamed Kanna, M.D. and Timothy Honigman, M.D.; and Mohammed Yousuf, M.D." R. Doc. 12, Tr. 17. The ALJ found that Dr. Yousouf's opinion calling for Walker to perform only sedentary work with postural limitations unpersuasive because there was no treating relationship nor was there any apparent in-person examination of Walker. Further the ALJ noted that Dr. Yousouf's findings were inconsistent with the medical evidence and Walker's reports of self-functioning that show he is less physically limited than Dr. Yousuf opined. R. Doc. 12, Tr. 17.

First, while, the ALJ ascribed the limitation finding to Dr. Yousuf, the form does not reference sedentary. Additionally, Walker is correct that the signature is illegible which is not uncommon for doctors and that the only reference to sedentary was by Dr. Finger not Dr. Yousuf. However, even accepting as true, the errors by the ALJ are immaterial because the essence of the ALJ's opinion is that he disagreed with the sedentary classification. The reason for the disagreement is because the sedentary classification contradicted Walker's testimony about his functionality in addition to other medical evidence.

Walker next contends that neither of the state examiners were orthopedist, orthopedic surgeons, neurologist, neurosurgeons, or any specialty related to Walker's impairments. Therefore, when the ALJ said that their opinions were supported by their expertise, which was actually internal medicine and pediatrics, it was not based upon substantial evidence because Walker's medical condition required a spine specialist like a neurologist or orthopedist. Walker contends that these mistakes show that the ALJ did not thoroughly review the medical record such that the opinion is not based upon substantial evidence.

The ALJ stated in the opinion the following:

> At the initial level, Dr. Kanaa reviewed the claimant's medical record in November 2019 and said that the claimant could perform light work, an assessment affirmed at the reconsideration level by Dr. Honigman in April 2020. Although the residual functional capacity includes exertional, postural, manipulative, and environmental limitations the undersigned finds their opinions persuasive. As state

agency consultants, their opinions **are supported by a comprehensive review of the claimant's medical record and involves their areas of medical expertise**. As state agency consultants, they have institutional knowledge of Agency rules, regulations, and criteria. Their opinions, moreover, are consistent with the objective medical evidence and reports of the claimant's self-functioning that corroborates the existence of physical impairments and symptoms that merely limit the claimant's ability to perform basic work activities. R. Doc. 14, Tr. 17.

Walker is correct neither state examiner was a neurologist or orthopedist and the ALJ's suggestion otherwise was error. However even though they were not specialists and a specialist's opinion are accorded greater weight than a non-specialist, "the ALJ has sole responsibility for determining a claimant's disability status." *Newton v. Apfel,* 209 F.3d at 455 (5th Cir. 2022)   Likewise, a non-specialist's opinion may be accorded weight as well. Therefore, the fact that Drs. Kanaa and Honigman were not orthopedists or neurologists does not render the ALJ's opinion lacking in substantial evidence. The ALJ's evaluation of the evidence as a whole is what is determinative. *Rollins v. Astrue,* 464 F. Ap'x 353. 358 (5th Cir. 2012). Other than pointing to their specialty distinction, Walker does not point to any portion of the medical evidence that would contradict these doctors' limitation findings. *See* R. Doc. 14, p. 11.

Further, other than pointing out the difference in specialty, Walker does not suggest that this status difference resulted in prejudice. The failure to do so therefore will not result in a vacating of the judgment without more. *See Taylor v. Astrue,* 706 F.3d 600 (5th Cir. 2012)(per curiam). *See also Brock v. Chaer,* 84 F.3d 726, 729 (5th Cir. 1996)(where the court held that a decision of the ALJ will not be reversed for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.) Therefore, while the ALJ erred when he stated that these doctors were specialist, this error does not render the opinion without substantial evidence.

### C. Evaluation of Plaintiff's Symptoms Under SSR 16-3p

Walker contends that the ALJ failed to evaluate his symptoms under SSR 16-3p regarding the intensity, persistence, and limiting effects of his pain. R. Doc. 14. Walker contends that the ALJ focused on some test results such as gait, ambulation, and strength and functioning in his upper and lower extremities while failing to consider the other abnormal tests and findings. Moreover, Walker alleges that while the records do show negative straight

10

leg raise, the ALJ fails to recognize the many other abnormal signs and symptoms identified at those appointment. *Id.* Walker additionally contends that the ALJ made incorrect statements and considered incorrect criteria. *Id*.

The Commissioner in contrast contends that the ALJ properly evaluated Walker's subjective complaints of pain and compared them to the record as a whole including medical examinations. R. Doc. 15, p. 9. The Commissioner contends that the ALJ anchored his decision to persuasive medical evidence including records of the examining specialist, radiology studies, treatment history, and Walker's activities. *Id.* The Commissioner also contends that Walker mis-frames SSR 16-3p and conflates diagnosis with disability. *Id.*

In SSR 16-3p, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy," stating "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). Under SSR 16-3p, an ALJ:

> will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. *Id*. at *10.

SSR 16-3p instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Id*. at *6.

In this matter, the ALJ found that the medical evidence does not support Walker's allegations of disabling impairments. R. Doc. 12, Tr. 16. The ALJ held that while diagnostic findings corroborate the existence of degenerative changes to Walker's back, neck, and shoulder, as well as neurological impairments in his upper extremities, they are described modestly, as the diagnostic images often describe "minimal, mild, or small changes." *Id*. The ALJ found that upon examination, Walker presented himself with moderate musculoskeletal symptoms, demonstrating normal gait and ambulation with negative straight leg raises, and adequate strength and

11

functioning in his upper and lower extremities. *Id*.

The ALJ found that Walker testified that he was scheduled to have a corrective procedure done in 2020 that was postponed due to COVID-19 but records also show that he chose to postpone surgical intervention in order to attempt more conservative care. The ALJ noted that Walker had undergone several procedures, including rhizotomies in both July and December 2016 and afterward he reported moderate pain. *Id*. The ALJ further noted that the treatment notes described a significant improvement in Walker's pain and functioning with pain-controlling epidural steroid injections which resulted in 100% pain relief in the left side of his back. The ALJ noted that Walker also experienced improvement with physical therapy and reduction in pain with prescribed medication. *Id*. The ALJ then referenced hospital records which indicate Walker had no physical restrictions and in November 2019 the treatment notes from Louisiana Pain Specialists noted that Walker had full range of motion in his cervical and lumbar spine. *Id*. The ALJ noted that Walker had the ability to toe-walk, heel-walk, and squat. *Id*. Therefore, the ALJ found that the objective medical evidence did not support the existence of disabling impairments.

The ALJ further held that Walker's daily functioning was less limited than one could reasonably expect, considering the alleged severity of his impairments. *Id*. He noted that Walker was able to groom himself, prepare meals with occasional sitting, perform light household chores, and help get his children ready for school. *Id*. The ALJ noted that Walker could drive an automobile, suggesting that he has the strength, stamina, and dexterity to turn his head and neck, turn the steering wheel, sit in the seat, and operate the pedals. *Id*. The ALJ also noted Walker's testimony that he shops in stores but uses a buggy. The ALJ held that the totality of the evidence does not give credence to Walker's allegations of disabling impairments but rather, substantiates the existence of severe impairments that limit but not wholly defeat Walker's ability to perform basic work activities. *Id*.

Walker contends that the ALJ "grossly misrepresented and/or manipulated the medical evidence. However, a review of the medicals confirms that while Walker had reduced reflexes and complained of limitation in movement due to stiffness and tenderness, his straight leg raising tests were negative, and he had normal

strength in his upper and lower extremities. The ALJ did not use the word "credibility" to impugn Plaintiff's character or imply that he was untruthful, but rather, as a "reference to the inconsistencies between Plaintiff's subjective complaints and the objective evidence in the record." *See Alvarez v. Colvin*, No. 4:16-CV-00432, 2017 WL 2712872, at *7 (S.D. Tex. June 22, 2017).

While the ALJ did not mention Walker's decreased reflexes, gait abnormality, or sensory decrease bilaterally in his hands, he did note that Walker had degenerative changes in the spine which included spinal stenosis. The ALJ's opinion also notes that he considered the pain that Walker experienced and how it responded to ibuprofen, suboxone, and gabapentin. R. Doc. 12, Tr. 177, 183, 340, & 345. While Walker is correct the ALJ did not detail each and every record in his opinion, the record still supports the opinion.

For example, Walker admitted that his symptoms improved after the 2016-2017 procedures. *Id.* at Tr. 182. The ALJ referenced the treatment records and noted that success of the ESI resulting in 100% reduction in pain. Additionally, Walker testified during the hearing that he used hot showers, a tens unit and years of physical therapy which "helped" him tremendously. *Id*. at Tr. 183, 185, 340, 346-47. The ALJ also noted that the hospital records indicated Walker does not have any physical restrictions which contradicted Walker's account of his restrictions. *Id*. Tr. 340-344.

Walker has successfully used conservative treatment, which according to caselaw is not suggestive of a disability. *Carey v. Apfel*, 230 F.3d 131, 139 (5th Cir. 2000). Further, pain which is mitigated as in this case, does not constitute a disability. *Garcia v. Colvin,* 622 F. App'x 405, 409 (5th Cir. 2015)(per curiam). Finally, the ALJ did not use the word "credibility" to impugn Plaintiff's character or imply that he was untruthful, but rather, as a "reference to the inconsistencies between Plaintiff's subjective complaints and the objective evidence in the record." *See Alvarez v. Colvin,* No. 4:16-CV-00432, 2017 WL 2712872, at *7 (S.D. Tex. June 22, 2017). The Court therefore finds that the ALJ properly evaluated Walker's symptoms under SSR 16-3p.

IV. **Recommendation**

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Eric Walker

Disability Insurance Benefits and Supplemental Social Security Income benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 7th day of July 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.