**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHARLES C. WALKER**                           **CIVIL ACTION**

**VERSUS**                                      **NO: 21-01253**

**SOCIAL SECURITY ADMINISTRATION**              **SECTION: I (4)**

<u>**SUPPLEMENTAL REPORT AND RECOMMENDATION**</u>

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("The Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied the request of Plaintiff, Charles C. Walker, ("Walker"), for a period of disability and Disability Insurance Benefits ("DIB") pursuant to Title XVI, 42 U.S.C. § 423.[1]

**I.    Background**

A Report and Recommendation was issued on July 8, 2022, by the Court. The Court set a deadline of July 22,2022 for objections to the Report and Recommendation.  The claimant, Charles Walker filed a timely objection on July 22, 2022.  Rec. doc. 17.  The Objections were referred to the undersigned for consideration.  Rec. doc. 18.

Walker raises three issues on objection:

(1)    whether the ALJ failed to evaluate the medical evidence and
        properly evaluate Walker's symptoms and residual functional
         capacity

(2)    whether the ALJ relied on erroneous vocational expert testimony and

---

[1] Rec. Doc. No. 1, p.1.

1

(3)    Evaluation of Walker's Carpal Tunnel Syndrome

The Court has previously detailed the factual background and procedural history of the claim and will not do so here. For reference to the facts and procedural history see Rec. doc. 16. Having set forth the newly raised issues, the Court will proceed with its analysis.

## II.    <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by

2

other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 122681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(c)(2)). However, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The relevant criteria to consider provides that the ALJ consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence". *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527. *See Newton*, 209 F.3rd 448. Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status."*Martinez v. Chater*, 64 F.3d 173, 176 (5th Cir. 1995).

3

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (*citing Martinez*, 64 F.3d at 174).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. 423(d)(3).

## III.  <u>Analysis</u>

### A.  <u>Vocational Expert Determination of Walker's Ability to Perform Past Work</u>

Walker contends that because the RFC prohibits him from commercial driving, that it also means that he cannot work as an automobile salesman because he periodically rides with prospective buyers who test drives cars that are for sale.   Walker concedes that while the position of automobile salesmen does not require him to have a commercial driver's license, the job does require him to ride along with customers, periodically move vehicles around the sales lot, and provide courtesy drop-offs for customers, therefore he contends that the job does require " a substantial amount of driving".   Walkers' argument remains the same as  his original position which was previously thoroughly analyzed.  However, for the sake of completeness, consideration will be given again.

4

The Commissioner contends that substantial evidence supports the ALJ's Step Four finding that Walker could perform his past relevant work as an automobile salesman.  R. Doc. 15. The Commissioner, therefore, contends that the ALJ's decision is based upon substantial evidence and the ALJ's decision should be affirmed.

According to the record, the ALJ found that Walker was capable of performing past relevant work as an automobile salesman. He noted that this work did not require the performance of work-related activities precluded by Walker's RFC.  In the RFC assessment, the ALJ found that Walker could sit for six hours out of an eight-hour day, for one hour at a time.  *See* R. Doc. 12, Tr. 15.  The ALJ further found that Walker had past relevant work as an automobile salesperson was of a light exertion level and skilled at specific vocational preparation level 6. *Id*. at Tr. 18. The ALJ further found that the automobile salesperson work met the recency, duration, and earnings requirements and thus constitutes Walker's past relevant work. *Id.*

It is settled that the authoritative sources for job requirements are both vocational expert testimony and the Dictionary of Occupational Titles (DOT).  Additionally, Courts can rely upon *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).* In this case both the DOT and vocational expert agree that an automobile salesperson job does not entail commercial driving. *Id.* at Tr. 188.  The DOT defines a salesperson, automobiles:

CODE: 273.353-010  TITLE(s): SALESPERSON, AUTOMOBILES (retail trade)

Sells new or used automobiles, trucks, and vans on premises of vehicle sales establishment: Explains features and demonstrates operation of car in showroom or on road. Suggests optional equipment for customer to purchase. Computes and quotes sales price, including tax, trade-in allowance, license fee, and discount, and requirements for financing payment of vehicle on credit. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May be designated Salesperson, New Cars (retail trade); Salesperson, Used Cars (retail trade).

In his objection, Walker wrongly extrapolates that because the regulations do not provide

5

a definition for commercial driving and nor does the decision elaborate on the meaning of the imposed restriction, that the ALJ must mean that Walker cannot perform his job because it requires driving as a part of his job.

Walker's error however is that he fails to consider the Occupations as defined in the DOT regulations. Nor does he point to a specific passage of the DOT which conflicts with the vocational expert's statement. Further, driving is not a significant part of this job as described by the DOT and therefore the job does not involve commercial driving. The DOT further specifies that any "driving-operating" is "not significant" for this job. *See* SSR 00-4p, 2000 WL 1898704, *3.

Walker further goes to the extreme while conceding that an automobile salesman is not a "commercial driver" the job involves the "commercial sale of automobile" and therefore because he has to sometimes drive, he could not work as a salesman. Again, Walker ignores the definition in the DOT. Furthermore, the ALJ properly questioned the vocational expert about Walker's ability to work as an automobile salesman. He responded to the ALJ's hypothetical person of Walker's age, education, work history, transferable skills, and RFC. He based his opinion on the DOT/SCO and found that Walker could perform work as an automobile salesperson as actually and generally performed. R. Doc. 12 at Tr. 18.

While Walker disagrees with the conclusions he provides no legal support for his suggestion he cannot do any driving, there was no apparent conflict in the vocational expert's statement that was inconsistent with or not addressed by the DOT and Walker's disagreement alone does not render the ALJ's decision lacking in substantial evidence. The Court should find that the ALJ's opinion is consistent with the DOT and the vocational expert's statement such that the opinion is based upon substantial evidence. Walker's fanciful argument alone does not render the decision lacking.

6

**B. ALJ's  Evaluation of medical evidence and Walker's Symptoms and RFC**

Walker contends that the ALJ made frequent errors when citing to the record which render his position unsupported by substantial evidence. Walker now claims that the ALJ's decisional errors are such that the decision cannot be evaluated without the court reweighing the evidence or substitute its own judgment.

 Walker now contends that  even though the ALJ cited to many pages in the record he failed to explain his reasoning so that he or the Court could understand what was inconsistent with Dr. Yousouf's opinion.  Walker does not complain that the ALJ did not explain his reasons but that he does not understand what was inconsistent with Dr. Yousouf's conclusions.

According to the record, the ALJ stated the following: "With regard to the opinion evidence, the undersigned considered the opinions of the state agency consultants, Mohamed Kanna, M.D. and Timothy Honigman, M.D.; and Mohammed Yousuf, M.D."  R. Doc. 12, Tr. 17. The ALJ found that Dr. Yousouf's opinion calling for Walker to perform only sedentary work with postural limitations unpersuasive because there was no treating relationship nor was there any apparent in-person examination of Walker. Further, the ALJ noted that Dr. Yousouf's findings were inconsistent with the medical evidence and Walker's reports of self-functioning that show he is less physically limited than Dr. Yousuf opined.  R. Doc. 12, Tr. 17.

First, while the ALJ ascribed the limitation finding to Dr. Yousuf, the form does not reference sedentary. Additionally, Walker is correct that the signature is illegible which is not uncommon for doctors and that the only reference to sedentary was by Dr. Finger not Dr. Yousuf. However, even accepting as true, the errors by the ALJ are immaterial because the essence of the ALJ's opinion is that he disagreed with the sedentary classification. The reason for the disagreement is because the sedentary classification contradicted Walker's testimony about his

7

functionality in addition to other medical evidence.

While the record reference Exhibits 36E/2-4, it is incorrect because the record does not have 36 exhibits.  It does have an exhibit referenced as 6E/2-4 which is a form completed by Walker that provides his own account of his ability to get around.   For example, Walker answered regarding his frequency of "getting around", that he gets around just about every day now.  Rec. doc. 12, Tr. 343.  He indicated that he could drive a car, get out on his own, shop in stores for food and necessities.  Id.  he also indicated that he shops once or twice a week but that he uses an electric cart.  If he uses a walking cart he completes the shopping a little bit quicker. Id.

Walker also indicated that regarding social activities since his illness that he is missing out on his old "hunting trips, golfing, and sports". Walker then denied being able to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, see, or complete tasks.  Id. at. Tr. 345. He stated that when he lifts something of substance that it feels like something in his back burns. Id.  While he earlier denied the ability to walk, in the next question he said he could walk for 10-15 minutes  but that medications make it hard for him to move. Id.  He acknowledged that he is able to finish what he started, follow written and spoken instructions.  The ALJ proceeded to site to a host of pages in the record to support his conclusion.

According to the record, Dr. Yousouf's conclusion that Walker was sedentary was not supported by his statements that he gets around daily which includes shopping albeit sometimes in a motorized shopping car and sometimes not.  Walker acknowledged that he drives himself and can shop for his necessities.  These statements by Walker support the ALJ's finding regarding Walker's self-functioning ability.  The ALJ did not find that he had no limitation but based on his own statements  he was less physically limited than Dr. Yousouf opined.

Walker contends that the ALJ did not give reasons, but Walker is wrong. He gave reasons

8

and then supported them by the record.  The Court only reviewed the records that were cited by the ALJ to support his reasons and has not provided "the rationale" to support the opinion.  A fair reading of the opinion and cited record references leads to no other conclusion but that the ALJ's opinion is supported by substantial evidence.

### C.  Evaluation of Walker's Carpel Tunnel Syndrome

Although not enumerated as a separate issue, Walker takes issue with the undersigned's report and recommendation suggesting that there was a reweighing of the evidence to provide a rational for his decision.  Rec. doc.17. Specifically, Walker notes that the court pointed out that the ALJ did not mention Walker's decreased reflexes, gait abnormality or sensory decrease bilaterally in his hands but that the ALJ did not note that Walker had degenerative changes in the spine which include spinal stenosis.  Walker contends that given that he has carpal tunnel syndrome the ALJ should have discussed the diagnostic testing and clinical signs of this condition and the failure to do so renders the decision lacking in substantial evidence.

First, Walker did not raise this as an issue on first review and so this issue goes beyond what was considered by the undersigned in the original report and recommendation.  While Walker raises this issue as a new standalone issue, he fails to point to  the record regarding any treatment or limitations associated with this condition.

Contrary to Walker's suggestion, the ALJ noted that Walker was diagnosed with carpal tunnel syndrome with neuropathy which was corroborated with diagnostic imaging.  See Rec. doc. 12, Tr. 16.   He further referenced the record at Exhibit 16F/9.  The record shows that on October 31, 2019, he was diagnosed  with Bilateral carpal tunnel syndrome, ulnar neuropathy at the elbow of the left upper extremity.

 The  record  shows  that  he  was  started  on  Neurontin  300  mg,  tramadol,  meloxicam,

methocarbamol and Medrol Doespack. Rec. doc. 12, 709-711. He was prescribed pain medications for nerves in edition to inflammatory and arthritic conditions.   While the  ALJ may not have mention the sensory decrease bilaterally in his hands, the opinion indicates he was well aware of the carpal tunnel syndrome, his treatment history and medications provided to treat the condition. Walker's claim that the ALJ failed to consider his carpal tunnel syndrome  is not well founded and the opinion is based on substantial evidence.

## IV.    <u>Recommendation</u>

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Charles C. Walker Disability Insurance Benefits and Supplemental Social Security Income benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 24th day of August 2022.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

11